## STATEMENT OF FACTS

Your affiant is a Supervisory Special Agent ("SSA") with the United States Capitol Police ("USCP"). I have been employed by the United States Capitol Police since 2005. I am currently assigned as a Special Agent in the Criminal Investigations Section where I investigate a multitude of violations of the law. I attended the Criminal Investigations Training Program in 2016 and Uniformed Police Training Program in 2005 at the Federal Law Enforcement Training Center in Brunswick, Georgia and Cheltenham, Maryland respectively for a combined period of nine months. I received extensive and formal on-the-job training in the provisions of Codes of the United States and District of Columbia. I am currently assigned to the Criminal Investigations Section at USCP Headquarters in Washington, D.C.

After speaking with multiple members of the law enforcement community and reviewing law enforcement paperwork from the USCP and the Westland, MI police department and based upon my firsthand knowledge investigating this incident, your affiant states as follows:

On Tuesday, November 5, 2024, at approximately 12:30 p.m. USCP Officer G.C. was working the x-ray machine at the U.S. Capitol, Capitol Visitor Center (CVC) located at 1 First Street Northwest, Washington, D.C. on the east front of the U.S. Capitol. Officer G.C. observed the subject, later identified as AUSTIN M. OLSON, walk inside the south screening facility of the CVC to begin the screening process.

As a routine security procedure at the CVC, OLSON was instructed to remove all belongings and place them in the designated container to pass through the x-ray machine. He placed his black coat and book bag in the x-ray machine. When the black coat passed through the x-ray machine, Officer G.C. saw what appeared to be a torch and a small firearm. Officer G.C. instructed OLSON to remain where he was, while the coat was being inspected and patted down to better identify the contents.

Upon inspecting the coat and emptying the contents of the pockets, Officer G.C. discovered a torch and a flare gun which was loaded with a single cartridge. The flare gun was orange in color with a barrel length of less than 12 inches, was equipped with a hammer and trigger mechanism and appeared to be functional. A photo of the flare gun is depicted in *Figure 1*, the flare cartridge is depicted in *Figure 2*, and a photograph of the torch is depicted in *Figure 3*.



*Figure 1. Flare Gun found in Olson's Jacket*



*Figure 2. Flare round found in Olson's Jacket*



*Figure 3. Flame Torch Found in Olson's Jacket*

Officer G.C. showed the contents to fellow officers in the vicinity and asked OLSON to walk through the magnetometer where another officer confirmed OLSON had no additional items of contraband. Officers continued to screen the contents of the bookbag and detected a strong odor consistent with gasoline emitting from the book bag.

Officer G.C. asked if OLSON has any gasoline like products in his possession, and OLSON said he "only has vodka in a bottle." Officer G.C. furthered inspected the contents of the bag and found one transparent glass liquor bottle, and one red metal screw top drinking container emitting a strong gasoline-like odor. Officer G.C. once again asked OLSON if the contents inside the bottles was, in fact, gasoline. OLSON then confirmed the bottles did contain gasoline. A photograph of the bottles of gasoline found in Olson's backpack is depicted in *Figure 4*.



*Figure 4. Bottles Containing Gasoline (Yellow Circles)*

OLSON stated that he was here to send a message to Congress and the torch and flare gun found in his possession were to "light up the message in fire." Another officer asked OLSON what message he is trying to deliver to Congress. OLSON removed a red closed envelope from under his shirt explaining that in the envelope was the message he wanted to send to Members of Congress. A USCP officer placed OLSON in handcuffs and pat him down for additional contraband.

OLSON refused to provide any identifying information and could not produce an identification card. Due to the strong odor of gasoline emitting from OLSON, the CVC was evacuated and the area was declared hazardous. The U.S. Capitol Police Hazardous Materials Response Team responded, rendered the area safe. The CVC was placed on lock-down beginning at approximately 12:30 p.m. and the event was cleared at approximately 2:00 p.m.

Officer's searched OLSON's items which included two booklets containing writings and his identification card.

OLSON was placed under arrest for Unlawful Activities, Possession of a Prohibited Weapon and Disorderly Conduct and was later transported to USCP Headquarters located at 119 D Street Northeast for processing.

Special Agent R.L., a Special Agent with the USCP, examined the flare gun. The device is an Orion brand flare gun that is capable of firing a single flare cartridge. The cartridge inside the device was also an Orion brand flare capable of burning up to seven seconds. Special Agent R.L.

was able to cock the hammer and pull the trigger showing that the firing pin could engage and strike the primer of a cartridge if loaded. The flame torch appeared to be operational. The flare gun is a device designed to expel or hurl a projectile capable of causing injury to individuals or property.

At 4:20 p.m. your affiant conducted a custodial interview of OLSON. The interview was audio and video recorded. I advised OLSON of his right and OLSON waived his rights and agreed to answer questions.

OLSON explained, on Monday, November 4, 2024, he packed up his "Political Thesis," a flare gun, flares, two notebooks, and his backpack, and began a drive to Washington, D.C. OLSON stopped at a gas station in Westland, Michigan and filled his vehicle's fuel tank, as well as a metal water bottle and a glass liquor bottle with gasoline. He placed the two bottles in his backpack and placed the backpack in the trunk of his vehicle. OLSON drove through the night and arrived in Washington, D.C. in the mid-morning hours of Tuesday, November 5, 2024.

OLSON admitted he wrote his "thesis" and planned to travel to the Washington, D.C. on Election Day with the intent to deliver his "thesis" to Congress and get arrested in the hope of gaining viral media attention to spread his message. OLSON specifically stated that he chose Election Day to maximize the impact of his statement. OLSON denied that he intended to start a fire or light himself on fire. OLSON denied any intent to harm anyone. OLSON stated he did intend to get arrested by bringing the flare gun and gasoline, knowing it would provoke a police response.

Based on the foregoing, your affiant submits that there is probable cause to believe that OLSON violated 40 U.S.C. § 5104(e)(1)(A)(i) Unlawful Activities which, in relevant part, states an individual or group of individuals may not carry on or have readily accessible to any individual on the Grounds or in any of the Capitol Buildings a firearm, a dangerous weapon, explosives, or an incendiary device. 40 U.S.C. § 5104 (a)(2) defines "dangerous weapon" to include, as relevant here, "(B) a device designed to expel or hurl a projectile capable of causing injury to individuals or property, a dagger, a dirk, a stiletto, and a knife having a blade over three inches in length."

_____
Supervisory Special Agent James M. Soltes
United States Capitol Police

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 6th day of November, 2024.

_____
THE HONORABLE MOXILA A. UPADHYAYA
U.S. Magistrate Judge